## COULTER v. INDEPENDENT ORDER OF FORESTERS.

(Circuit Court, E. D. Pennsylvania. January 25, 1909.)

### No. 24.

**1. PLEADING (§ 237*)—AMENDMENT TO CONFORM TO PROOF.**

Where plaintiff's statement did not contain proper averments to support a finding to which the proof showed he was entitled, defendant having formal notice of the claim and having filed an affidavit of defense thereto, and the whole subject having been litigated at the trial, defendant's motion for judgment notwithstanding the verdict because of such defects should be denied, and plaintiff be allowed to amend to conform to the proof.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 603, 607, 618; Dec. Dig. § 237.*]

**2. INSURANCE (§ 695*) — AGENCY CONTRACT — TERMINATION — RULES AND BY-LAWS.**

One of the laws of a mutual benefit society provided that the chief ranger should have general management of the affairs of the order, and should appoint from time to time such subordinates as the interest of the order might require, who should perform the duties assigned to them from time to time by the chief ranger or by the executive council. Another provision declared that the person so employed should receive a salary or allowance from time to time, determined by the supreme chief ranger or by the executive council, and that such chief ranger should have power to remove and discharge from time to time any person he may have appointed or employed under such provision. *Held*, that the chief ranger, having employed plaintiff as state manager until the next meeting of the supreme court of the order, had power to terminate the contract prior to that time in good faith, for the good of the order.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1836; Dec. Dig. § 695.*

Mutual benefit insurance contracts as affected by subsequent provisions and amendments of charter, constitution, or by-laws, see note to Supreme Council A. L. H. v. Champe, 63 C. C. A. 285.]

On Motion for New Trial and for Judgment Notwithstanding the Verdict. Denied.

Joseph Levy and B. F. Owens, for plaintiff.

E. Spencer Miller and Craig A. Marsh, for defendant.

J. B. McPHERSON, District Judge. Plaintiff's statement of claim sets out his cause of action in the following language:

"On or about the 9th day of August, 1905, in consideration that the plaintiff had agreed with the defendant to enter into its service as state manager for the state of Pennsylvania, and to remove himself and family from the city and state of New York to the city and county of Philadelphia aforesaid, and there keep and maintain an office for the transaction of the business of the defendant in said state, and to serve the defendant in that capacity at a certain salary, at the rate of two hundred dollars per month, with an additional compensation of one hundred and fifty dollars per month, which was intended to cover the cost of rent, light, heat, and telephone service for said office, and traveling expenses in conducting defendant's business as a fraternal insurance corporation, and such further sums of money as the plaintiff should expend in removing his family, himself, and his household goods, etc., from the city of New York to the city of Philadelphia aforesaid, all of which several sums of money were to be paid by the defendant to the plain-

tiff during his continuance in such service, the defendant corporation then and there undertook and promised the plaintiff to receive him into its service in the capacity aforesaid, and to retain and employ him in such service, at the salary and other compensation aforesaid, until the next regular meeting of the supreme court of said corporation defendant, which said meeting was and is intended to be held on or about the 1st day of August, 1909; that the defendant's promise and undertaking to employ and retain him in such service, with the salary and compensation aforesaid, was the inducement for the plaintiff to make such contract of employment, and to remove himself and family from the city of New York to the city of Philadelphia to enter the defendant's service, and without which promise and undertaking the plaintiff would not have entered into such contract and service."

It appeared at the trial, that the plaintiff, a physician by profession, had been in the employ of the defendant, a beneficial, or fraternal insurance, association, from 1892 to 1900, serving for the first two years of this period as medical referee for Great Britain and Ireland, and for the last six years serving as manager for New York City, Connecticut, and Rhode Island. He then resumed the practice of medicine, and was living in New York City, when Dr. Oronhyatekha, the supreme chief ranger, or the highest executive officer of the order, made him certain propositions in January, 1904, which resulted in an agreement. Some of its terms are undisputed. The plaintiff was to remove to Philadelphia to enter the defendant's service as a manager or deputy chief ranger for the state of Pennsylvania, and was to receive a certain monthly sum for salary and expenses. This agreement was to last until August, 1905, when the supreme court of the order was to meet, and when all commissions issued by the supreme executive officer to deputy chief rangers terminated by virtue of section 94, subsection 4, of the general laws of the order that were adopted in April-May, 1902. (This provision was in effect repeated in section 70, subsection 4, of the general laws adopted in July-August, 1905). The foregoing undisputed terms of the agreement of January, 1904, were fully carried out, and no violation thereof is charged by the plaintiff. He averred, however, that the agreement had two more terms, and these were both in dispute. The first was to the effect that the plaintiff should be allowed the cost of removing his household from New York City to Philadelphia; and the second was, as the plaintiff put it, "an understanding" that the agreement was to be renewed for a further term of three or four years after the meeting of the supreme court of the order in August, 1905. I shall speak further of this "understanding" in a moment; for the present, a few words more should be said about the alleged agreement concerning the expenses of removal. These were not paid, and it will be observed that, while the plaintiff includes them in his statement of claim, he does not clearly aver how and when his right to such expenses accrued, but on the whole leaves the impression, I think, that the right is based upon a contract made in August, 1905. At the trial, however, it appeared beyond question that whatever right existed to the repayment of these expenses rested wholly upon the agreement of January, 1904. The jury reached a verdict in the plaintiff's favor for the sum claimed on this behalf, and the defendant now urges that the plaintiff's statement does not make the proper averments to support the finding, and it is

contended that for this reason judgment should be entered for the defendant notwithstanding the verdict. I agree that the plaintiff's statement is probably inadequate upon this point, but, as the defendant had actual, although informal, notice of the claim (as appears from its affidavit of defense filed in January, 1908), and as the whole subject was fought out at the trial, I think the plaintiff should be allowed to amend. Accordingly, permission is hereby given to amend by inserting the proper averments concerning this item within 10 days.

Returning to the alleged "understanding" that the agreement of January, 1904, was to be renewed in August, 1905, it is further to be observed that as both the plaintiff and the defendant agree that a new contract of some kind was in fact made in August, 1905, the scope of the "understanding" ceases to be of importance. What the terms of the new contract were, was in dispute. The plaintiff testified that the agreement of January, 1904, was renewed in August, 1905, and was to continue until the next meeting of the supreme court (which was held in July, 1908), while the defendant offered evidence to the effect that the plaintiff was to be continued in his office of manager, or deputy chief ranger, only so long as he succeeded in securing members at a cost that did not exceed $5 for each person. He was not able to obtain members at this rate, and accordingly his services were dispensed with on July 1, 1907; Dr. Oronhyatekha having meanwhile died, and the order of dismissal having been made by his successor in the office of supreme chief ranger.

It was the defendant's contention at the trial that the general laws of the order authorized the dismissal, whatever the contract might originally have been, and a binding instruction to this effect was asked for. The point was reserved, as the position, if well taken, was controlling, but I thought it desirable to have also the jury's finding upon the disputed question of fact concerning the terms of the parol agreement that was made in August, 1905. If the agreement was to the effect testified to by the plaintiff. certain questions would arise, whereas different questions would be presented if the defendant's evidence upon this point was accepted as satisfactory. The dispute was therefore submitted to the jury, but after a prolonged deliberation they were unable to agree upon this branch of the case, and so reported to the court. As already stated, they did agree that the plaintiff should recover for the expenses of removal under the contract of January, 1904, and accordingly the verdict was taken for this amount. At the same time—and in order to save a second trial if possible—the court directed them to render a verdict in favor of the defendant upon the remaining issue, taking the provisional position that the defendant was right in contending that, whatever the contract of August, 1905, might have been, the plaintiff was subject to removal under the general laws of the order. The point has since been argued, and upon further consideration I am satisfied that the binding construction was correct, as I think a brief statement will show.

In the present situation of the case, the testimony of the plaintiff must, of course, be accepted as true, and I assume therefore that the agreement made in August, 1905, contained the provisions to which

he testified, and especially the provision that it should continue in force until the next meeting of the supreme court. The single question for determination is, whether that term of the contract was irrevocable (except for cause), or whether it must be regarded as controlled by the general laws of the order. That Dr. Oronhyatekha had power to make the agreements of January, 1904, and August, 1905, is undoubted. Section 16, subsections 1 and 2, of the laws of 1902, and section 19, subsections 1 and 2, of the laws of 1905, declare that:

"The supreme chief ranger is ex-officio president and general manager of the order, and it shall be his duty * * * to have the general superintendence and management of the affairs of the order and the promotion of its growth, and to appoint from time to time such inspectors general, assistant general managers, managers, district superintendents, and deputy supreme secretaries, as the interests of the order may require, who shall perform such duties as may be assigned to them from time to time by the supreme chief ranger, or by the executive council."

And his power to fix the sums to be paid to such persons as he might employ appears in section 31, subsection 7, of the laws of 1902, and section 29, subsection 8, of the laws of 1905:

"The persons employed by the supreme chief ranger at the head office of the supreme court, or elsewhere, shall receive the salary or allowance from time to time determined by the supreme chief ranger or by the executive council."

The plaintiff concedes that his employment under either contract could not have lasted longer than the next meeting of the supreme court. This body meets every third or fourth year, and, even if the contract had not been expressly limited to expire at the next meeting, the plaintiff admits that the general laws of the order would forbid it to continue in force beyond that time. But he argues that (except for cause) he could not be removed before the meeting of the supreme court, because he was expressly employed until that meeting, and no power to remove him at the discretion of the supreme chief ranger was reserved in the contract. This argument, however, fails to give the proper weight to a provision in the general laws that to my mind is decisive. Section 16, subsection 2, of the laws of 1902, and section 19, subsection 2, of the laws of 1905 (already referred to), both contain this further declaration:

"The supreme chief ranger shall have power to remove and discharge from time to time any person he may have appointed or employed under the provisions of this subsection."

By this unequivocal language the power to remove is reserved without qualification or limitation. The plaintiff's long connection with the order must have made him familiar with the laws concerning appointment and removal, but, whether he actually was acquainted with them or not, he is chargeable with notice and is bound by their provisions, for he knew that he was dealing with an officer of the order whose power to employ was derived from its general laws and was presumably exercised in subordination thereto. No doubt these laws contemplate that the power to remove will only be exercised for the object of advancing the interests of the order, but the discretion of the supreme chief ranger was unfettered in determining when these

interests called upon him to dismiss a person whom he had employed. It may perhaps be assumed that he must act in good faith, but, if this qualification exists, I need only say that there was no evidence whatever in the present case that the plaintiff's removal was in bad faith. The chief ranger who succeeded Dr. Oronhyatekha believed that the interests of the order would be promoted by a change in Pennsylvania that did not involve the plaintiff's continuance in office, and I think he had a right to act upon this deliberate and honest judgment. If the plaintiff's argument is correct, it is not easy to see where a limit can logically be placed upon the power of the supreme chief ranger to bind the order by a contract of employment. If the exercise of his power to employ takes away his power to remove, although both powers are given by the general laws, why should it be conceded that the term of employment is nevertheless limited by the same laws so that it must expire at the next meeting of the supreme court, even if the chief ranger attempts to make a contract for a longer period? If the exercise of the power to employ repeals in effect the express provision that the employé may be removed "from time to time," what saves the limitation of the term of service to the next meeting of the supreme court from being repealed also? From the plaintiff's point of view, a contract for 10 years would be as irrevocable as a contract that was limited in accordance with the general laws; and an agreement to pay a certain sum as salary, no matter how large, would be equally beyond the reach of change. It is true that section 29, subsection 8, declares that the persons employed by the supreme chief ranger shall receive the salary or allowance "from time to time" determined, but this reservation of control over the sum to be paid is no more effective than the reservation of control over the term of employment that is found in the express grant of power to remove. I do not think the question needs further elaboration. In my opinion, the reserved power is clear and was properly exercised. It follows that the jury were correctly instructed that the plaintiff could not recover upon the contract of August, 1905.

This conclusion makes it unnecessary to consider the question how far the contract was affected by the statutes of frauds that are in force in New Jersey and Canada respectively. The contract was made in one jurisdiction or the other, and is attacked as invalid because it was not in writing. The plaintiff replies that the place of performance was Pennsylvania, where there is no such statutory requirement, and that the agreement must be judged by the law of that state. Obviously, however, this matter is now of academic interest only, and needs no further attention.

The plaintiff's motion for a new trial is refused. The defendant's motion for judgment notwithstanding the verdict is also refused, and to this refusal an exception is sealed. After the proper amendment has been made, judgment may be entered for $325 in favor of the plaintiff.